# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 20-256-1 |
| RAPHAEL SHAW | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, Jennifer Arbittier Williams, Acting United States Attorney for the Eastern District of Pennsylvania, and Michael R. Miller, Assistant United States Attorney for the District, hereby files this memorandum in aid of sentencing.

On May 31, 2020, as thousands of people peacefully protested in Philadelphia, defendant Raphael Shaw used the demonstrations as a cover to burglarize a bank. The defendant and his confederates broke into the Wells Fargo Bank located at 1575 North 52nd Street in Philadelphia, Pennsylvania, and removed a cash dispenser recycler ("CDR") containing $104,000 from the bank. The defendant and his fellow burglars then loaded the CDR onto a forklift, and the defendant entered a vehicle that escorted the forklift away from the bank. The defendant's involvement in this serious crime added to the mayhem that swept through Philadelphia approximately one year ago, and he deserves a sentence at the high end of the applicable guidelines range of 10 to 16 months.

### I. BACKGROUND

#### a. Legal Background

On August 25, 2020, the defendant was charged by Indictment with one count of entering a bank with intent to commit a felony, in violation of Title 18, United States Code, Section 2113(a) (Count One); and one count of taking and carrying away more than $1,000 from a bank,

and aiding and abetting, in violation of Title 18, United States Code, Sections 2113(b) and 2 (Count Two).   On February 10, 2021, the defendant pled guilty to Count Two pursuant to a written plea agreement and agreed to pay restitution in the amount of $104,000.   The defendant is scheduled for sentencing before this Court on June 21, 2021.   Pursuant to the plea agreement, the government will move to dismiss Count One at the time of sentencing.

      b.      **<u>Factual Background</u>**

On May 25, 2020, George Floyd died while in the custody of the Minneapolis, Minnesota, Police Department.   The circumstances surrounding Floyd's death drew national media attention, and in the days following Floyd's death, large-scale protests were held throughout the United States.   On May 31, 2020, as many people peacefully protested in Philadelphia, others, such as the defendant Raphael Shaw, used the protests as cover to commit burglaries, vandalism, and looting.

One such burglary occurred on May 31, 2020, at approximately 6:00 p.m., when a large group of individuals forcibly entered the Wells Fargo Bank, located at 1575 North 52nd Street in Philadelphia, Pennsylvania.   These individuals looted and burglarized the bank, stealing a cash dispenser that contained $104,000 and then using a forklift to take the dispenser away from the bank.   Presentence Investigation Report ("PSR") ¶ 15.   The bank was located in the Park West Town Center, and almost all the businesses in the shopping center were looted on the weekend of May 30-31, 2020.

Following the burglary, Philadelphia police officers viewed bank surveillance footage and identified the defendant as one of the persons inside the bank at the time of the burglary.

During the burglary, the defendant and several of his confederates surrounded a CDR and moved it through the bank. The defendant and his fellow burglars proceeded to load the CDR onto a forklift. The defendant then entered a dark sedan which escorted the forklift out of the shopping center through the parking lot and onto Philadelphia streets. Less than three weeks after the burglary, the defendant's Instagram account showcased a picture of him holding a large amount of United States currency. PSR ¶¶ 20-21.

## II. STATUTORY MAXIMUM SENTENCE

The statutory maximum penalty for violating 18 U.S.C. § 2113(b), the crime to which the defendant pled guilty, is 10 years' imprisonment, three years of supervised release, a fine of $250,000, and a $100 special assessment.

## III. SENTENCING GUIDELINES CALCULATION

The United States Probation Office correctly calculated the defendant's advisory sentencing guidelines range as 10 months to 16 months, resulting from a final offense level of 12 and a criminal history score of I. The defendant faces a base offense level of 6 because he stole money from a bank, with an eight-level upward adjustment because he stole $104,000. PSR ¶¶ 28-29. With a two-level decrease for accepting responsibility, the defendant has a final offense level of 12. PSR ¶ 36.

## IV. CONSIDERATION OF THE 3553(a) FACTORS

The Supreme Court has declared, "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" of a sentencing decision. *Gall v. United States*, 552 U.S. 38, 49 (2007). Thus, the Sentencing

Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

The Court must consider all of the sentencing factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence in this case. The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[1]

### A. The nature and circumstances of the offense and the history and characteristics of the defendant.

On May 31, 2020, the defendant used legitimate, peaceful protests as cover to burglarize

---

[1] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (quoting *United States v. Navedo-Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

a bank. The defendant and his confederates stole $104,000 from the bank. That money derived from the bank's hard-working patrons who had entrusted it to the bank's care for safekeeping. Such a serious felony, committed by brazenly loading a CDR onto a forklift and then driving the forklift through open city streets, all in broad daylight, added to the chaos that engulfed Philadelphia on the weekend of May 30-31, 2020. Such conduct deserves a sentence at the high end of the guidelines.

Nothing in the defendant's past excuses or mitigates his criminality. The defendant has lived in a single, stable residence his entire life with his mother and stepfather. PSR ¶ 50. He has no mental health or substance abuse issues and his family paid to send him to West Catholic High School. PSR ¶¶ 57-59. In fact, the defendant's mother reports that, unlike the other families on his block, the defendant grew up in a two-parent household. PSR ¶ 53. Despite all this, the defendant made a choice to violate the law by brazenly using a forklift to burglarize a bank in broad daylight. The defendant's background provides no excuse for his behavior, and the seriousness of his crime calls for a sentence at the high end of the guidelines.

      **B.**    **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

The defendant committed a serious felony in the middle of widespread mayhem and unrest. He burglarized a bank using a forklift, stole his neighbors' hard-earned money, and did so in broad daylight, thereby demonstrating his complete lack of respect for the law. The defendant took advantage of a time of legitimate significant social protest in order to steal for his own benefit. The defendant's criminality is quite serious, and a sentence at the high end of the guidelines would provide a just punishment that promotes respect for the law.

**C.     The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.**

This case presents a clear need for general deterrence. On the weekend that the defendant committed his burglary, looting and mayhem occurred throughout Philadelphia. Business owners lost their savings and livelihoods, while many Philadelphians saw the shops they relied on burn up in smoke. For years to come, the memory of the riots will linger and may make those who would consider opening banks, grocery stores, and other essential businesses reluctant to invest in Philadelphia.

The harm created by the defendant's conduct is severe. He not only burglarized a bank, but helped make the lives of those living in his community significantly more difficult. Such conduct must be deterred, so that the next time people consider looting and burglarizing businesses that others depend on, they know that doing so can lead to serious consequences. The Court can deter future looters and rioters by giving the defendant a sentence at the high end of the guidelines.

Moreover, a high-end sentence will protect the public from further crimes of the defendant. The defendant has shown no compunction about breaking the law, as evidenced by his willingness to use a forklift to commit a felony during the daytime and in full view of hundreds of potential witnesses. The need to protect the public from the defendant also supports giving him a high-end guidelines sentence.

**D.     The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

The defendant has no educational or medical needs that justify reducing his sentence. He is 21 years old, reports being in good physical health, and has no serious illnesses, mental health problems, or substance abuse issues. PSR ¶¶ 56-58. However, the defendant does appear to have a need for educational and vocational training. The defendant previously dropped out of community college, got through high school with a 1.79 GPA, and claimed the sole vocational skill of rapping. PSR ¶ 59. To the extent that the defendant wishes to further his educational or employment needs, a sentence at the high end of the guidelines will not inhibit those efforts. While in the custody of the Bureau of Prisons, and while on supervised release, the defendant can, if he wishes, avail himself of a variety of opportunities for training and education.

**E.     The guidelines and policy statements issued by the Sentencing Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

Finally, giving the defendant a sentence at the high end of the guidelines will avoid creating an unwarranted disparity between him and similarly situated criminals. Although under "18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, 552 U.S. 85, 89-91 (2007), it remains the case that "the [Sentencing] Commission fills an important institutional role: It has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise," *id*. at 109 (internal quotation omitted). The Supreme Court has thus recognized that, in the ordinary

case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough*, 552 U.S. at 109 (quoting *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007)). Moreover, "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).

Here, a guidelines sentence at or approaching 16 months' incarceration would fairly punish the defendant for his criminality. Moreover, such a sentence would ensure uniformity between the defendant's punishment and that of other criminals who have committed similar crimes. The Court should thus give the defendant a sentence at the high end of the guidelines.

### F. The Defendant Should Pay Restitution.

The defendant should pay restitution in the amount of $104,000 to compensate for the monetary harm he caused by burglarizing the bank. Restitution should be paid to Wells Fargo Bank and sent to Wells Fargo Bank, Restitution/Recovery, Attention: Kathy Marcanti, P.O. Box 912038, Denver, Colorado 80291-2038. *See* Exhibit A. The victim requests that the defendant's name and case number be included on restitution payments.

## V. CONCLUSION

The defendant used a forklift to burglarize a bank in broad daylight, thereby adding to the mayhem that engulfed Philadelphia during a weekend of chaos. The Court should impose a sentence at the high end of the guidelines range in order to fairly punish the defendant for his crime and to deter others from engaging in similar destructive and dangerous behavior.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney


*/s/ Michael Miller*
MICHAEL MILLER
AMANDA R. REINITZ
Assistant United States Attorneys

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Government's Sentencing Memorandum has been served by electronic mail upon:

Michael McDermott, Esquire
mmcder1188@aol.com

Sara Donson
United States Probation Office
Sara_Donson@paep.uscourts.gov

                                                  */s/ Michael R. Miller*
                                                  MICHAEL R. MILLER
                                                  Assistant United States Attorney

Date: June 3, 2021